IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JIM HOUSTON, INC., d/b/a JIMMY HOUSTON OUTDOORS, and JIMMY HOUSTON, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-11-1046-L |
| TYM-USA, INC., d/b/a TYM TRACTORS, | ) ) | |
| Defendant. | ) | |

# O R D E R

Plaintiff Jim Houston, Inc. produces television programs of outdoor activities with plaintiff Jimmy Houston as host. Defendant TYM-USA distributes TYM tractors manufactured in South Korea. On August 17, 2011, plaintiffs filed this action in the District Court of Oklahoma County, asserting two claims for relief: breach of contract and violation of right of publicity pursuant to 12 O.S. § 1449 (2011).[1] On September 12, 2011, defendant filed an Answer and Counterclaim in the District Court of Oklahoma County, asserting two claims for relief: breach of contract and trademark infringement. On September 20, 2011, defendant removed the case to this court based on the parties' diversity of citizenship.

This matter is before the court on cross-motions for partial summary judgment presented by the parties (Doc. Nos. 17 and 20) [hereinafter cited as "Plaintiffs'

---

[1] Plaintiffs' complaint contained two additional claims for relief, conversion and unjust enrichment. These two claims were dismissed by joint stipulation of the parties on January 5, 2012 (Doc. No. 16).

Motion" and "Defendant's Motion," respectively].  Plaintiffs seek a ruling that, as a matter of law, defendant breached a "Sponsor Contract" and used Jimmy Houston's image or likeness without authorization.  Defendant seeks a ruling that, as a matter of law, defendant did not breach the "Sponsor Contract" and plaintiffs infringed defendant's trademark.

Summary judgment is appropriate if the pleadings, affidavits, and depositions "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment.  In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982).  Nonetheless, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).  In addition, the plain language of

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The court's review of this matter has been hindered by defendant's inconsistent arguments.  For instance, in defendant's Answer and Counterclaim, defendant admits that a bilateral contract was formed with plaintiffs in January 2011 and counterclaims against plaintiffs for breach of that contract.  Defendant's Answer and Counterclaim at 1-2, ¶¶ 4, 6 (Doc. No. 1, Exhibit 5); id. at 6, ¶ 1.  However, defendant later vacillates, arguing that the contract was never formed because plaintiffs' full performance would have been required for contract formation to occur.[2] E.g., Defendant's Motion at 4-5.  Defendant also argues that Robert Mullett,[3] TYM-USA's President in January 2011, lacked authority to bind the corporation. Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment at 2. However, in response to a Request for Admission, defendant admits that Robert Mullett did have authority to bind the corporation.  Exhibit 1 to Plaintiffs' Reply Brief in Support of Motion for Partial Summary Judgment at 4.

---

[2] That is, defendant argues that only through plaintiffs' full performance would a unilateral contract have been formed.

[3] Throughout the record, Robert's surname is variably spelled "Mullett" and "Mullet."  The court will use "Mullett."

In spite of the inconsistent arguments presented by defendant, the undisputed and admitted facts establish that Jim Houston, Inc. and TYM-USA, Inc. entered into a bilateral contract in January 2011.  Plaintiffs' Complaint ¶¶ 4, 6 (Doc. No. 1, Exhibit 1); Defendant's Answer and Counterclaim at 1-2, ¶¶ 4, 6; Defendant's Answer and Counterclaim at 6, ¶ 1; Exhibit 1 to Plaintiffs' Motion.[4]  The parties memorialized this agreement in a written document entitled "Jimmy Houston Outdoors/Jimmy Houston Adventures Sponsor Contract 2011" [hereinafter cited as "Sponsor Contract"].  Exhibit 1 to Plaintiffs' Motion.  The Sponsor Contract was drafted by Jim Houston, Inc. and signed by Jimmy Houston, as "president and/or agent" of Jim Houston, Inc. on January 3, 2011, and by Robert Mullett, as "president and/or agent" of TYM-USA, d/b/a TYM Tractors on January 17, 2011.  Plaintiffs' Objection and Response to Defendant's Motion for Partial Summary Judgment at 3; Exhibit 1 to Plaintiffs' Motion.  At the time the contract was signed, each of these signatories was "president and/or agent" of his respective corporation.[5]

---

[4] In determining whether to grant summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In the Joint Status Report and Discovery Plan and in Defendant's Motion, defendant asserts that no contract was formed, whether bilateral or unilateral.  However, in defendant's Answer and Counterclaim, defendant admits to the contract's formation and admits that it "contained mutual promises and mutual consideration," thereby acknowledging the contract's bilateral nature. Defendant's Answer and Counterclaim at 1-2, ¶¶ 4, 6; Plaintiffs' Complaint ¶¶ 4, 6.  In fact, defendant counterclaims against plaintiffs for breach of the same contract, stating that "Plaintiff [sic] and Defendant entered into a contract for the advertisement of Defendant's products by Plaintiff [sic]." Defendant's Answer and Counterclaim at 6, ¶ 1.  Having failed to amend its Answer and Counterclaim, defendant is bound by those admissions and claims.

[5] Defendant admits that "[a]t the time the sponsorship agreement was entered into, Robert Mullet [sic] was the President of TYM-USA, Inc.," noting that TYM-USA did not cease its relationship with Robert Mullett until April 2011.  Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment at 2.  However, defendant asserts that Robert Mullett did not have

In the Sponsor Contract, plaintiffs promised to provide certain advertising and promotional benefits to defendant for one year during the 2011 "show series" of "Jimmy Houston Outdoors/Jimmy Houston Adventures," including 208 thirty-second commercial spots.  Defendant promised to provide "a TYM T1003 [tractor] with front end loader in lieu of cash payment for the advertising and promotion."  Exhibit 1 to Plaintiffs' Motion at ¶¶ 1-3; *see also* Plaintiffs' Complaint ¶¶ 4, 6 (describing and reiterating the Sponsor Contract's mutual consideration); Defendant's Answer and Counterclaim at 1-2, ¶¶ 4, 6.  Plaintiffs' "active sponsors" enjoy an implied authorization to use Jimmy Houston's image and likeness.  Plaintiffs' Motion at 7, 17; Exhibit 5 to Plaintiffs' Motion ¶ 11.

Ultimately, plaintiffs did not air any TYM thirty-second commercials during the 2011 show series, and defendant did not deliver the tractor to plaintiffs.  Plaintiffs' Motion at 9, ¶ 9; Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment at 3, ¶ 9; *see* Plaintiffs' Motion at 3-6.  Via letter dated May 5, 2011, Stephen Pavelka, signing as Vice President of TYM-USA, Inc., informed plaintiffs that "all marketing activities [had] been suspended" and that defendant was

---

authority to bind the corporation.  Id.  This argument fails given that defendant admits "[i]n January 2011, Plaintiff and Defendant entered into a contract for the advertisement of Defendant's products by Plaintiff," i.e., the Sponsor Contract, and defendant is counterclaiming against plaintiffs for breach of that same contract.  Defendant's Answer and Counterclaim at 6, ¶¶ 1-3.  Plaintiffs and defendant have each submitted identical copies of the Sponsor Contract as exhibits, and there is no dispute as to which contract defendant refers.  Furthermore, in response to a Request for Admission, defendant admits that "Robert Mullet [sic] had the actual authority to sign on behalf of defendant, TYM-USA Inc. d/b/a TYM Tractors."  Exhibit 1 to Plaintiffs' Reply Brief in Support of Motion for Partial Summary Judgment at 4.

"indefinitely suspend[ing]" the Sponsor Contract.  Exhibit 12 to Plaintiffs' Motion; Exhibit 2 to Defendant's Motion.

As the Sponsor Contract is to be construed under the laws of Oklahoma,[6] the court analyzes the parties' motions using that law.  To recover for breach of contract, the plaintiffs must prove that 1) a contract was formed;[7] 2) the contract was breached; and 3) damages directly resulted from the breach.  Digital Design Group, Inc. v. Information Builders Inc., 24 P.3d 834, 843 (Okla. 2001).  The undisputed and admitted facts establish that the Sponsor Contract was formed, and the parties have counterclaimed against each other for breach of that contract.  The only issue now before the court with respect to the breach of contract claims is whether defendant breached the Sponsor Contract.[8]

Determining whether a contract has been breached requires an interpretation of the contract as a whole.  See 15 O.S. § 157 (2011).  This interpretation is controlled by the parties' mutual intent "as it existed at the time of contracting, so far as the same is ascertainable and lawful," and this intent is to be determined from the language used, "if the language is clear and explicit, and does not involve an absurdity."  15 O.S. §§ 152, 154 (2011).  Moreover, for a written contract, "the

---

[6] Exhibit 1 to Plaintiffs' Motion at ¶ 5; see also Plaintiffs' Complaint ¶ 4; Defendant's Answer and Counterclaim at 1, ¶ 4.

[7] A contract requires "1. Parties capable of contracting.  2. Their consent.  3. A lawful object; and,  4. Sufficient cause or consideration."  15 O.S. § 2 (2011).

[8] That is, defendant does not seek summary judgment regarding whether plaintiffs breached the Sponsor Contract.

6

intention of the parties is to be ascertained from the writing alone, if possible . . . ." 15 O.S. § 155 (2011).

When a contract's language is clear, that is, without ambiguity, the court interprets it as a matter of law. Corbett v. Combined Commc'ns Corp. of Oklahoma, Inc., 654 P.2d 616, 617 (Okla. 1982) (citing Van Horn Drug Co. v. Noland, 323 P.2d 366 (Okla. 1958)). Moreover, whether an ambiguity exists is for the court to decide. Id. (citing Panhandle Coop. Royalty Co. v. Cunningham, 495 P.2d 108 (Okla. 1971)). "If an ambiguity arises by reason of the language used and not because of extrinsic facts, construction of the contract remains a question of law for the court." Walker v. Telex Corp., 583 P.2d 482, 485 (Okla. 1978). Whether extrinsic evidence is required "to clarify [an] ambiguity is purely [a question] of law for the court." Panhandle Coop. Royalty Co., 495 P.2d at 112 (citing Harjo Gravel Co. v. Luke-Dick Co., 153 P.2d 112 (Okla. 1944)). When such extrinsic evidence is required to discern the parties' intent, construing the contract then involves a mixed question of law and fact that, under proper instructions from the court, should be submitted to the jury for determination. Pollock Stores Co. v. Draper, 215 P.2d 843, 845 (1950).

To construe an ambiguous contract, the court places itself – to the greatest extent possible – in the position of the parties at the time of contract formation, "consider[ing] the instrument as drawn, its purposes, and the circumstances surrounding the transaction." Minor v. Blankton, 243 P.2d 1008, 1013 (Okla. 1952); see also 15 O.S. § 163 (2011) (permitting a contract to "be explained by reference

to the circumstances under which it was made, and the matter to which it relates"). "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it."  15 O.S. § 165 (2011).  If an ambiguity cannot be resolved by the statutory rules of interpretation, then it is to be construed "most strongly against the party who caused [it]."  15 O.S. § 170; *see also*, Cities Serv. Oil Co. v. Geolograph Co., 254 P.2d 775, 782 (Okla. 1953) (reiterating ambiguity required for rule to apply and emphasizing rule's subservience to rule that requires references to surrounding circumstances to determine meaning and purpose of language used by contracting parties).

In this case, the parties have a written contract.  However, from the language in the Sponsor Contract alone, it is not possible to ascertain the parties' mutual intent at the time of contract formation vis-à-vis when the tractor would have been due as payment to plaintiffs.  This intent must be ascertained before the court can determine whether defendant breached the contract.  In disputing whether defendant breached the contract, each party cites separate language in the Sponsor Contract.  Plaintiffs emphasize that defendant was obligated to deliver the tractor "as soon as one [was] available," suggesting that the tractor was due immediately, regardless of whether performance of the advertising and promotional services had begun.[9]  Plaintiffs'

---

[9] Plaintiffs also argue that defendant's delivery of the tractor was a condition precedent to producing a 30-second commercial for defendant.  Plaintiffs' Motion at 4-6.  However, the Sponsor Contract's language does not address the production of a commercial; it only addresses the

Objection and Response to Defendant's Motion for Partial Summary Judgment at 4.

Defendant emphasizes that the tractor would "become the property of HOUSTON

for [the advertising and promotional] services," suggesting that full performance by

plaintiffs was a condition precedent to the tractor becoming due.  *See* Defendant's

Motion at 3-6.

Although it is undisputed that defendant did not deliver the tractor, the

Sponsor Contract's inconsistent language creates an ambiguity as to when the

parties intended defendant's performance to be required, which, in turn, affects

whether defendant breached the contract by failing to deliver the tractor.  That is, if

the tractor was due immediately, then defendant breached the contract by failing to

deliver the tractor, but, if the tractor was only due after full performance by plaintiffs,

then the tractor never became due.[10]  In considering the contract as a whole, the

ambiguity as to the parties' intent is not clarified.  Based on the limited information

presented by the parties, the court is unable to apply all applicable statutory rules of

contract interpretation to resolve the Sponsor Contract's ambiguous language.

Thus, plaintiffs have not established that defendant breached the contract as a

_____

provision of air time.

   [10] Although the extent of plaintiffs' performance under the Sponsor Contract is disputed by
the parties, it is undisputed that no 30-second commercials for defendant's products ever aired,
meaning that plaintiffs never fully performed.  Plaintiffs argue that their performance of airing the
208 thirty-second commercials was frustrated by defendant's failure to deliver additional tractors
for plaintiffs to use in producing a 30-second commercial for defendant.  However, the Sponsor
Contract only contemplates "airing commercial announcements" without addressing which party
would be responsible for producing or providing the 30-second commercial.

matter of law, and summary judgment on this issue is not appropriate.

Likewise, summary judgment is not appropriate on the issue of whether defendant used plaintiffs' rights of publicity without authorization in violation of 12 O.S. § 1449.  To prove such violation, plaintiffs must establish that defendant *knowingly used* plaintiffs' "name, voice, signature, photograph, or likeness . . . *for the purpose of* advertising or selling, or soliciting purchases of, products, merchandise, goods, or services, *without such person's prior consent . . . .*"  12 O.S. § 1449(A) (2011) (emphasis added).  Use in a commercial medium must be directly connected to commercial sponsorship or paid advertising for consent to be required, and whether such direct connection exists is a question of fact.  12 O.S. § 1449(E) (2011).  Finally, consent is not required when a person's name, voice, signature, photograph, or likeness is used "in connection with any news, public affairs, or sports broadcast or account, or any political campaign."  12 O.S. §1449(D) (2011).

Plaintiffs admit that "active sponsors" enjoy an implied authorization to use Jimmy Houston's image and likeness.  Plaintiffs' Motion at 7, 17; Exhibit 5 to Plaintiffs' Motion ¶ 11.  Plaintiffs allege that any use of Jimmy Houston's image or likeness by defendant after defendant indefinitely suspended the Sponsor Contract on May 5, 2011 was unauthorized.  Plaintiffs' Motion at 6-7, 17-18; Exhibit 5 to Plaintiffs' Motion ¶ 12.  Thus, until May 5, 2011, plaintiffs appear to have considered defendant to be an "active sponsor," i.e., one who enjoyed implicit authorization to use Jimmy Houston's image and likeness.  Plaintiffs' Motion and exhibits do not

conclusively establish defendant's purpose in any alleged unauthorized use or that

defendant knowingly used plaintiffs' image or likeness after the implied authorization

ended.  Therefore, plaintiffs have not established as a matter of law that defendant

violated 12 O.S. § 1449, and summary judgment on this issue is not appropriate.

Similarly, summary judgment is not appropriate on the issue of whether

plaintiffs infringed defendant's trademark.   Although alleging infringement of a

registered trademark, defendant cites no statutory authority for its claim and appears

to be bringing its claim under the common law.   *See* Defendant's Motion at 6-7.

Proving a common law trademark infringement claim requires a complainant to

establish, "[a]mong other things, . . . a protectable interest in its mark, the

[opponent's] use of that mark in commerce, and the likelihood of consumer

confusion."  Donchez v. Coors Brewing Co., 392 F.3d 1211, 1219 (10th Cir. 2004)

(citation omitted) (noting similarity to unfair competition claim under § 43(a) of the

Lanham Act, i.e., 15 U.S.C. § 1125).  Defendant's evidence does not conclusively

establish that any of these elements have been satisfied.  For instance, although

both parties agree that TYM is a registered trademark[11], defendant has not

established a protectable interest in the mark, as it is not registered to TYM-USA.[12]

Defendant has not established as a matter of law that plaintiffs infringed on

---

[11] Defendant's Motion at 2, ¶ 3; Plaintiffs' Objection and Response to Defendant's Motion at 3, ¶ 3.

[12] According to Exhibit 3 to Defendant's Motion, the trademark is registered to Tong Yang Moolsan Co., Ltd. in Seoul, South Korea.  Thus, TYM-USA must establish its own protectable interest in the mark.

defendant's trademark, and summary judgment on this issue is not appropriate.

In sum, Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 17) is DENIED.  Defendant's Motion for Partial Summary Judgment (Doc. No. 20) is likewise DENIED.

It is so ordered this 22nd day of June, 2012.

_Tim Leonard_

TIM LEONARD
United States District Judge